IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

DANIEL D. MOORE,
    Plaintiff,

v.                                         Civil No. 3:20cv310 (DJN)

PNC BANK, N.A., *et al.*,
    Defendants.

**MEMORANDUM OPINION**

Plaintiff Daniel D. Moore ("Plaintiff") originally brought this action in the Circuit Court for the County of Chesterfield against Defendants PNC Bank, N.A. ("PNC Bank"), Samuel I. White, P.C. ("White"), and A2ZProperty LLC ("A2ZProperty") (collectively, "Defendants"), seeking rescission of the foreclosure sale of his home and compensatory damages based on PNC Bank's alleged failure to meet face-to-face with Plaintiff as required by 24 C.F.R. § 203.604 and White's alleged breach of its fiduciary duties as substitute trustee. On April 29, 2020, with the consent of White and A2ZProperty, PNC Bank removed Plaintiff's claims to this Court based on federal question and diversity jurisdiction. (ECF No. 1.)

This matter now comes before the Court on Plaintiff's Motion to Remand (ECF No. 7), which moves to remand this case back to the Circuit Court for lack of subject matter jurisdiction, and Defendants' Motions to Dismiss (ECF Nos. 5, 13, 18), which move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's claims against them for failure to state a claim. For the reasons set forth below, the Court GRANTS Plaintiff's Motion to Remand (ECF No. 7), REMANDS this case to the Circuit Court for the County of Chesterfield and DENIES WITHOUT PREJUDICE Defendants' Motions to Dismiss (ECF Nos. 5, 13, 18).

## I.      BACKGROUND

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept

Plaintiff's well-pleaded factual allegations as true, though the Court need not accept Plaintiff's

legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Further, in resolving Plaintiff's

Motion to Remand, the burden falls on PNC Bank, as the removing party, to establish federal

jurisdiction. *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). To

determine whether PNC Bank has met this burden, the Court will strictly construe the allegations

in PNC Bank's Notice of Removal (ECF No. 1) and resolve all inferences in favor of remand.

*Id.* With these principles in mind, the Court accepts the following facts.

### A.      Plaintiff's Allegations

On April 27, 2004, Plaintiff executed a mortgage loan with National City Mortgage

("National City"). (Compl. (ECF No. 1-1) ¶ 6.) The loan was evidenced by a note (the "Note")

and secured by a deed of trust (the "Deed of Trust") on Plaintiff's home (the "Property").

(Compl. ¶ 6.) At some point after the execution of the Deed of Trust, PNC Bank acquired

National City and became National City's assignee under the Note and the Deed of Trust.

(Compl. ¶ 7.)

Under the terms of the Note, PNC Bank could not accelerate Plaintiff's loan payments

unless permitted to do so by Federal Housing Administration ("FHA") regulations. (Compl.

¶ 9.) The Deed of Trust also prohibited foreclosure unless permitted by FHA regulations.

(Compl. ¶ 10.) Relevant here, Plaintiff alleges that PNC Bank operated a "branch office" within

200 miles of his home, which required PNC Bank to hold a "face-to-face interview with

[Plaintiff], or make reasonable effort to arrange such a meeting" before accelerating payments on

his mortgage loan. 24 C.F.R. § 203.604; (Compl. ¶ 13.)

Despite its obligations under § 203.604, PNC Bank neither conducted a face-to-face meeting with Plaintiff nor sent a letter or representative to attempt to arrange such a meeting. (Compl. ¶ 15.)[1] Instead, after Plaintiff defaulted on his loan payments, PNC Bank appointed White as the substitute trustee under the Deed of Trust and instructed White to sell the Property in foreclosure. (Compl. ¶¶ 16, 18.) White then advertised the foreclosure sale of the Property for January 16, 2020. (Compl. ¶ 19.) Plaintiff responded by filing a complaint in state court seeking to void the scheduled foreclosure sale. (Compl. ¶ 20.) Plaintiff sent a copy of the complaint to White and requested that White cancel the foreclosure sale. (Compl. ¶ 21.)

Despite Plaintiff's request, on January 16, 2020, White proceeded to auction off the Property at the Chesterfield County Courthouse. (Compl. ¶ 23.) Plaintiff's counsel attended the auction and again advised White that Plaintiff had filed an action challenging the validity of the foreclosure. (Compl. ¶ 23.) Plaintiff's counsel also warned the prospective buyers at the auction that a pending challenge to the foreclosure existed and that PNC Bank had not complied with the face-to-face meeting requirement. (Compl. ¶ 25.) An agent of A2ZProperty heard this warning. (Compl. ¶ 26.) Nonetheless, A2ZProperty offered the highest bid at the auction and White thereafter executed a trustee's deed (the "Trustee's Deed") that purported to convey ownership of the Property to A2ZProperty. (Compl. ¶ 29.) Finally, on March 19, 2020, A2ZProperty demanded that Plaintiff vacate the Property. (Compl. ¶ 30.)

**B.    Plaintiff's Complaint**

Based on the above allegations, on March 23, 2020, Plaintiff filed a complaint in the Circuit Court for the County of Chesterfield raising two counts for relief. (Compl. ¶¶ 8-43.) In

---

[1]    Plaintiff's Complaint alleges that "Wells Fargo never conducted a face-to-face meeting," even though Wells Fargo Bank, N.A., does not appear to have any involvement in this matter. Nonetheless, based on context, the Court interprets the misnomer as a scrivener's error and accepts the allegation as against PNC Bank.

Count One, Plaintiff alleges that PNC Bank breached the Deed of Trust by directing White to foreclose on the Property despite PNC Bank's failure to meet face-to-face with Plaintiff or otherwise make reasonable attempts to do so. (Compl. ¶ 32.) And, in Count Two, Plaintiff alleges that White breached its fiduciary duties as substitute trustee by proceeding with the foreclosure sale despite PNC Bank's failure to conduct a face-to-face meeting and even though Plaintiff provided notice of the pending challenge to the validity of the foreclosure. (Compl. ¶¶ 40-41.) From these claims, Plaintiff seeks an order rescinding the Trustee's Deed and declaring the foreclosure sale of the Property void, an order restoring the Property to Plaintiff, and a judgment of $150,000 against PNC Bank and White. (Compl. at 11.)

### C.     PNC Bank's Notice of Removal

On April 29, 2020, PNC Bank removed Plaintiff's claims to this Court with the consent of both White and A2ZProperty. (Not. of Removal ("NOR") (ECF No. 1) at 1.) In support of removal, PNC Bank claims that the Court may exercise both federal question and diversity jurisdiction over Plaintiff's claims. (NOR ¶¶ 3-4.) Specifically, because Plaintiff's claims require the Court to interpret federal regulations — namely, the scope of the face-to-face meeting requirement under § 203.604 — PNC Bank maintains that such claims implicate substantial federal questions that give rise to federal question jurisdiction. (NOR ¶¶ 19-23.)

Alternatively, PNC Bank asserts that the Court may exercise diversity jurisdiction over Plaintiff's claims, because "there is complete diversity between and among the real parties in interest" and the amount in controversy exceeds $75,000. (NOR ¶ 25.) In support of this assertion, PNC Bank alleges that Plaintiff is a citizen of Virginia and that PNC Bank, as a national association, is a citizen of Delaware, where it maintains its main office. (NOR ¶¶ 26-

27.) PNC Bank further alleges that the amount in controversy exceeds the jurisdictional threshold of $75,000, because Plaintiff's Complaint seeks damages of at least $150,000. (NOR ¶ 57.) And although both White and A2ZProperty are citizens of Virginia, PNC Bank contends that because Plaintiff cannot possibly state a claim against either party, the Court may ignore their citizenship under the fraudulent joinder doctrine. (NOR ¶¶ 28-54.)

### D.   Plaintiff's Motion to Remand

Following PNC Bank's removal, on May 4, 2020, Plaintiff moved to remand his claims back to state court for lack of subject matter jurisdiction. (ECF No. 7.) In support of his Motion, Plaintiff argues that the Court lacks federal question jurisdiction, because his claims amount to state law breach-of-contract and breach-of-fiduciary-duty causes of action. (Mem. in Supp. of Mot. to Remand ("Pl.'s MTR Mem.") (ECF No. 8) at 1-3.) Plaintiff contends that § 203.604 does not confer a cause of action on private plaintiffs, so his claims against PNC Bank must necessarily rely on PNC Bank's obligation to comply with § 203.604 under the Deed of Trust. (Pl.'s MTR Mem. at 1-2.) Plaintiff further cites to cases from this District in which courts have held that removal based on the face-to-face meeting requirement under § 203.604 does not suffice to confer federal question jurisdiction. (Pl.'s MTR Mem. at 2-3 (citing *Lee v. Citimortg., Inc.*, 739 F. Supp. 2d 940 (E.D. Va. 2010); *Kluxen v. PNC Mortg.*, 2010 WL 3603493 (E.D. Va. Sept. 8, 2010); *Kersey v. PHH Mortg. Corp.*, 2010 WL 3222262 (E.D. Va. Aug. 13, 2010)).)

As for PNC Bank's alternative claim of diversity jurisdiction, Plaintiff contends that the Court should not ignore the citizenship of either White or A2ZProperty, because Plaintiff has stated a viable claim against both parties. (Pl.'s MTR Mem. at 3-6.) Because both White and A2ZProperties are citizens of Virginia and are not fraudulently joined, Plaintiff avers that

complete diversity does not exist and that the Court lacks diversity jurisdiction over Plaintiff's claims, requiring remand. (Pl.'s MTR Mem. at 6.)

PNC Bank filed its Memorandum in Opposition to Plaintiff's Motion on May 28, 2020, (Mem. in Opp. to Pl.'s Mot. to Remand ("PNC MTR Resp.") (ECF No. 12)), and Plaintiff elected not to file a reply brief within the time allowed under the Local Rules, rendering Plaintiff's Motion to Remand (ECF No. 7) now ripe for review.

### E.    A2ZProperty's Motion to Dismiss

Following removal, all three Defendants moved separately to dismiss Plaintiff's claims against them for failure to state a claim. First, on May 4, 2020, A2ZProperty moved to dismiss Plaintiff's rescission claim, because the foreclosure sale of the Property has proceeded too far for rescission to be an appropriate remedy. (Mem. in Supp. of Mot. to Dismiss ("A2Z MTD Mem.") (ECF No. 6) at 3.) A2ZProperty contends that rescission constitutes an extreme remedy that should be used only in cases "'involving fraud, collusion with the purchaser, and a foreclosure sale price of such gross inadequacy that it shocks the conscience of the court.'" (A2Z MTD Mem. at 3-4 (quoting *Young-Allen v. Bank of Am., N.A.*, 839 S.E.2d 897, 900 (Va. 2020) (internal quotations and citations omitted)).) Because Plaintiff has alleged none of these scenarios here, and because any claim for a violation of the face-to-face meeting requirement does not involve A2ZProperty, A2ZProperty argues that the Court should dismiss Plaintiff's claim for rescission of the foreclosure sale and the Trustee's Deed. (A2Z MTD Mem. at 4.) Plaintiff did not file a response to A2ZProperty's Motion within the time allowed under the Local Rules, rendering A2ZProperty's Motion now ripe for review.

**F.      PNC Bank's Motion to Dismiss**

Separately from A2ZProperty, on May 28, 2020, PNC Bank also moved to dismiss Plaintiff's claims for failure to state claim. (ECF No. 13.)  In support of its Motion, PNC Bank argues that Plaintiff's sole claim against it — Count One — must fail, because Plaintiff fails to adequately allege any resulting damages from PNC Bank's alleged breach of its obligations under the Deed of Trust.  (Mem. in Supp. of Def. PNC Bank's Mot. to Dismiss ("PNC MTD Mem.") (ECF No. 14) at 4.)  PNC Bank contends that all of the damages alleged in Plaintiff's Complaint did not arise directly from its failure to conduct a face-to-face meeting, but instead resulted from Plaintiff's failure to make payments on his mortgage loan.  (PNC MTD Mem. at 4.)

PNC Bank further contends that because Plaintiff has not adequately pled that he could have cured his default on the mortgage loan, his claim against PNC Bank for its failure to satisfy a condition precedent to foreclosure must fail.  (PNC MTD Mem. at 4-5 (citing *Young-Allen*, 839 S.E.2d at 901).)  In support of this contention, PNC Bank cites to the decisions of several district and circuit courts holding that a plaintiff's failure to allege an ability to cure a loan default precludes a breach-of-contract claim based on the lender's noncompliance with FHA regulations. (PNC MTD Mem. at 5-7 (collecting cases).)  Without plausible allegations that Plaintiff could have cured his mortgage default had PNC Bank conducted a face-to-face meeting, PNC Bank argues that Plaintiff cannot demonstrate any damages resulting from PNC Bank's failure to conduct such a meeting, precluding a breach-of-contract claim based on that failure.  (PNC MTD Mem. at 7-9.)

Plaintiff filed his Memorandum in Opposition to PNC Bank's Motion on June 15, 2020, (Mem. in Opp. to Mot. to Dismiss Filed by PNC Bank (ECF No. 23)), and PNC Bank filed its

7

Reply on June 22, 2020, (Reply in Supp. of Def. PNC Bank's Mot. to Dismiss (ECF No. 24)), rendering PNC Bank's Motion now ripe for review.

### G. White's Motion to Dismiss

Finally, on June 29, 2020, White filed its own Motion to Dismiss, which also moves to dismiss Plaintiff's claims for failure to state a claim. (ECF No. 18.) In support of its Motion, White argues that Plaintiff cannot obtain a declaratory judgment that the foreclosure sale was void, because the foreclosure sale has been completed, rendering any declaratory judgment impermissibly retrospective. (Mem. in Support of SIWPC's Mot. to Dismiss ("White MTD Mem.") (ECF No. 19) at 6-7.) Like A2ZProperty, White also contends that Plaintiff's claim for rescission of the Trustee's Deed must fail, because rescission constitutes an extraordinary remedy, the preconditions of which do not apply here. (White MTD Mem. at 8-9.) And White reiterates PNC Bank's argument that Plaintiff has failed to adequately allege any damages stemming from PNC Bank's alleged breach of the terms of the Deed of Trust. (White MTD Mem. at 9-11.)

As for Plaintiff's fiduciary duty claim in Count Two, White argues that because Plaintiff fails to adequately allege damages stemming from PNC Bank's noncompliance with the face-to-face meeting requirement, Plaintiff cannot sustain a claim against White for breaching any fiduciary duty that it owed to Plaintiff. (White MTD Mem. at 12-13.) And although Plaintiff provided notice to White that he had challenged the validity of the foreclosure sale in state court, White maintains that it owed no duty to halt the foreclosure sale based solely on Plaintiff's challenge without further proof that Plaintiff could have cured his default on the mortgage loan. (White MTD Mem. at 13-16.)

8

Plaintiff filed his Memorandum in Opposition to White's Motion to Dismiss on June 12,

2020, (Mem. in Opp. to Mot. to Dismiss filed by White (ECF No. 20)), and White elected not to

file a reply within the time allowed under the Local Rules, rendering White's Motion to Dismiss

now ripe for review.

## II.    STANDARD OF REVIEW

A motion challenging the removal of an action may be premised on either a lack of

subject matter jurisdiction or a procedural defect apart from jurisdiction. *Ellenburg v. Spartan*

*Motors Chassis, Inc.*, 519 F.3d 192, 196 (4th Cir. 2008). Motions to remand premised on a

district court's lack of subject matter jurisdiction may be filed at any time, and the burden to

establish federal jurisdiction falls on the removing party, with a removing party's jurisdictional

allegations strictly construed in favor of remand. *Mulcahey*, 29 F.3d at 151. Ultimately, a party

seeking removal must establish that the district court can exercise original jurisdiction over the

plaintiff's claims, which in most cases requires allegations supporting either federal question or

diversity jurisdiction under 28 U.S.C. §§ 1331 and 1332, respectively. *Id.* (citing § 1441).

If subject matter jurisdiction exists, the Court may proceed to consider any motions

challenging the merits of a plaintiff's claims, including motions to dismiss filed pursuant to

Federal Rule of Civil Procedure 12(b)(6). To that end, a motion to dismiss pursuant to Rule

12(b)(6) tests the sufficiency of a complaint or counterclaim; it does not serve as the means by

which a court will resolve contests surrounding the facts, determine the merits of a claim or

address potential defenses. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir.

1992). In considering a motion to dismiss, the Court will accept a plaintiff's well-pleaded

allegations as true and view the facts in a light most favorable to the plaintiff. *Mylan Labs., Inc.*

*v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, "the tenet that a court must accept as

true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

Under the Federal Rules of Civil Procedure, a complaint or counterclaim must state facts sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). As the Supreme Court opined in *Twombly*, a complaint or counterclaim must state "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action," though the law does not require "detailed factual allegations." *Id.* (citations omitted). Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," rendering the right "plausible on its face" rather than merely "conceivable." *Id.* at 555, 570. Thus, a complaint or counterclaim must assert facts that are more than "merely consistent with" the other party's liability. *Id.* at 557. And the facts alleged must be sufficient to "state all the elements of [any] claim[s]." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) and *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

## III.   ANALYSIS

Because the Court cannot address the merits of Plaintiff's claims without the jurisdiction to do so, the Court will first address Plaintiff's Motion to Remand. Only if the Court can exercise subject matter jurisdiction over Plaintiff's claims will the Court proceed to consider Defendants' Motions to Dismiss.

### A.    PNC Bank Fails to Establish Subject Matter Jurisdiction.

As mentioned, PNC Bank alleges that the Court may exercise both federal question and diversity jurisdiction over Plaintiff's claims. (NOR ¶¶ 3-4.) PNC Bank asserts that federal

question jurisdiction exists despite the state-law nature of Plaintiff's claims, because the dispositive issue under those claims raises significant federal issues, namely: the interpretation of the face-to-face meeting requirement under 24 C.F.R. § 203.604. (NOR ¶¶ 18-23; PNC MTR Resp. at 5-8.) Alternatively, PNC Bank avers that the Court may exercise diversity jurisdiction over Plaintiff's claims, because PNC Bank and Plaintiff constitute completely diverse parties and the amount in controversy exceeds $75,000, and because the Court may ignore the citizenship of A2ZProperty and White, as both are fraudulently joined parties. (NOR ¶¶ 24-58; PNC MTR Resp. at 8-16.)

Plaintiff responds that his claims in fact constitute purely state-law claims, because § 203.604 provides no private right of action pursuant to which he could bring a federal claim against PNC Bank. (Pl.'s MTR Mem. at 1-2.) Plaintiff also cites to cases holding that similar claims based on FHA regulations do not confer federal question jurisdiction. (Pl.'s MTR Mem. at 2-3 (citations omitted).) And Plaintiff contends that the presence of A2ZProperty and White defeats diversity jurisdiction, because both are citizens of Virginia, like Plaintiff, and because Plaintiff joined neither party fraudulently. (Pl.'s MTR Mem. at 3-6.)

### 1.   *The Court Lacks Federal Question Jurisdiction Over Plaintiff's Claims.*

As to PNC Bank's first jurisdictional claim — federal question jurisdiction — 28 U.S.C. § 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitutions, laws, or treaties of the United States." "Most of the cases brought under § 1331 federal question jurisdiction 'are those in which federal law creates the cause of action.'" *Mulcahey*, 29 F.3d at 151 (quoting *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 809 (1986)). In such cases, "the courts of the United States unquestionably have federal subject matter jurisdiction." *Id.* (citations omitted). Here, PNC Bank concedes that

11

Plaintiff brings only state-law claims for breach of contract and breach of a fiduciary duty.  (PNC MTR Resp. at 4.)  Therefore, Plaintiff's claims are not claims created by federal law.

However, when, as here, state law creates a cause of action, federal question jurisdiction may still exist if the state-law claim "necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 28 (1983). Whether a "substantial question of federal law" exists depends not on a "single precise definition," but relies instead on "careful judgments about the exercise of federal judicial power in an area of uncertain jurisdiction." *Merrell Dow*, 478 U.S. at 813.  That is, federal courts must consider whether the federal question(s) raised by an otherwise state-law cause of action "justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).  It will not suffice that a state-law claim merely raises a "contested federal issue;" rather, the federal issue must "indicat[e] a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Id.* at 313.  And even if a disputed and ostensibly important federal issue exists, federal courts must assess whether the exercise of federal jurisdiction would upset "the state-federal line draw (or at least assumed) by Congress" in limiting the jurisdiction of the federal courts. *Id.* at 314.  Thus, "the [ultimate] question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.*

Here, PNC Bank alleges that Plaintiff's state-law claims raise a substantial federal question, because "[t]he dispute between the parties here is not merely whether the HUD regulation was satisfied (it was), but rather whether 24 C.F.R. § 203.604(b) even requires a face-

12

to-face interview under circumstances where such a meeting would be meaningless and futile in light of defaults of a court order and a bankruptcy case in which the plaintiff did not reaffirm the debt—an issue that requires an interpretation of the federal regulation itself." (NOR ¶ 22.) The Court finds that this stated federal issue does not justify the exercise of federal question jurisdiction over Plaintiff's state-law claims.

For one, PNC Bank's stated federal issue — whether the face-to-face meeting requirement should be waived as futile — does not "necessarily" arise from Plaintiff's claims. *Grable*, 545 U.S. at 314. Instead, it arises as a state law contract defense from PNC Bank. Moreover, PNC Bank alleges that it in fact complied with the face-to-face meeting requirement, which obviates the need to determine whether requiring a face-to-face meeting could be waived as futile under § 203.604. (NOR ¶ 22.) Instead, a state court need only determine whether PNC Bank complied with the face-to-face meeting requirement as alleged — a purely factual issue that would leave PNC Bank's futility arguments untouched. And even if the state court determined that PNC Bank failed to satisfy its obligations under § 203.604, as PNC Bank argues in its Motion to Dismiss, the state court could avoid the futility question by first considering whether Plaintiff has proven consequential damages from PNC Bank's breach of those obligations — a question of fact under state contract law. (PNC MTD Mem. at 3-9.)

More importantly, if the futility issue does arise, PNC Bank fails to demonstrate how that state contract issue will require an interpretation of § 203.604. Indeed, in its Notice of Removal, PNC Bank cites to a case in which the Appellate Court of Illinois, relying on state equity principles, found the rescission of a foreclosure sale for breach of the face-to-face meeting requirement futile when, as here, the plaintiff failed to reaffirm the mortgage debt in bankruptcy. (NOR ¶ 22 (citing *PNC Bank, N.A. v. Wilson*, 74 N.E.3d 100, 107 (Ill. App. (2d) 2017)).) PNC

Bank fails to allege why a Virginia state court could not rely on the same state law principles to avoid rescission of the foreclosure sale here. As such, Plaintiff's "right" to relief under state law does not turn necessarily on "some construction of federal law." *Merrell Dow*, 478 U.S. at 808.

Because PNC Bank fails to establish that the futility issue necessarily arises from Plaintiff's state-law claims, the Court need not consider whether the futility issue proves sufficiently substantial to justify resort to a federal forum. Nonetheless, at least one court in this District has found that issues requiring the interpretation of § 203.604 do not constitute substantial federal questions giving rise to jurisdiction under § 1331, raising doubts as to whether PNC Bank could establish substantiality here. *See, e.g., Lee*, 739 F. Supp. 2d at 944 (finding that an issue relating to the interpretation of § 203.604, which the court described as "an obscure provision contained in a federal administrative regulation," did not raise a substantial federal question that justified the exercise of federal question jurisdiction). Indeed, the fact that PNC Bank can adequately defend itself without raising the futility issue or resorting to a detailed analysis of the regulation speaks to the issue's unsubstantial nature. And considering that state courts have historically exercised jurisdiction over foreclosure disputes, the Court will not rely on the possibility that an avoidable federal issue might arise to upset the "balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314.

Because PNC Bank fails to present any federal questions that necessarily arise from Plaintiff's claims or that prove sufficiently substantial to justify resort to a federal forum, the Court finds that it lacks federal question jurisdiction over Plaintiff's claims.

### 2. *The Court Also Lacks Diversity Jurisdiction Over Plaintiff's Claims.*

As mentioned, PNC Bank also alleges that the Court may exercise diversity jurisdiction over Plaintiff's claims, because PNC Bank and Plaintiff constitute completely diverse parties and

14

the amount in controversy exceeds $75,000, and because the Court may ignore the citizenship of A2ZProperty and White, as both are fraudulently joined parties. (NOR ¶¶ 58.) Plaintiff responds that the presence of A2ZProperty and White defeats diversity jurisdiction, because both are citizens of Virginia, like Plaintiff, and because Plaintiff joined neither party fraudulently. (Pl.'s MTR Mem. at 3-6.) The Court agrees with Plaintiff.

28 U.S.C. § 1332(a)(1) provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states." The party seeking removal based on diversity jurisdiction must establish that all parties are completely diverse, and all allegations supporting jurisdiction will be strictly construed in favor of remand. *Md. Stadium Auth. v. Ellerbe Becket, Inc.*, 407 F.3d 255, 260 (4th Cir. 2005). That said, a defendant's right to removal should not be "easily overcome by tactical maneuvering by plaintiffs." *McKinney v. Bd. of Trs.*, 955 F.2d 924, 928 (4th Cir. 1992).

To that end, "[w]hen a plaintiff tactically names a non-diverse defendant to defeat diversity jurisdiction, the defendant may invoke the judicially created doctrine of fraudulent joinder to remove the case to federal court." *Carter v. Hitachi Koki U.S.A., Ltd.*, 445 F. Supp. 2d 597, 600 (E.D. Va. 2006) (citing *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999)). "This doctrine allows a district court to dismiss a non-diverse defendant and assume jurisdiction over the case." *Id.* (citations omitted). Notably, although the name suggests otherwise, the fraudulent joinder doctrine does not require a showing of actual fraud. *Id.* (citing *Mayes*, 198 F.3d at 461 n.8). Instead, the removing party must demonstrate either that: "'[1] there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [2] . . . there has been outright fraud in the plaintiff's pleading of jurisdictional facts.'"

15

*Mayes*, 198 F.3d at 464 (quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993)).

Here, PNC Bank alleges that both A2ZProperty and White have been fraudulently joined, because Plaintiff could not possibly establish a cause of action against them in state court. (NOR ¶¶ 32-54.) This requires PNC Bank to demonstrate that Plaintiff cannot establish a claim against both A2ZProperty and White "even after resolving all issues of law and fact in [Plaintiff's] favor." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999). Importantly, because no party disputes that Plaintiff, A2ZProperty and White are citizens of Virginia, if Plaintiff can possibly state a claim against either A2ZProperty or White, the Court may not exercise diversity jurisdiction over Plaintiff's claims.[2]

As to Plaintiff's fiduciary duty claim against White, PNC Bank argues that Plaintiff cannot sustain such a claim, because: (1) Plaintiff's claim against White sounds in contract, not tort; (2) Plaintiff fails to allege any cognizable fiduciary duty owed by White to Plaintiff; and, (3) Plaintiff fails to allege proximate damages from White's alleged breach. (NOR ¶¶ 32-43; PNC MTR Resp. at 9-14.) Plaintiff responds that *Squire v. Virginia Housing Development Authority*, 758 S.E.2d 55 (Va. 2014), establishes that a mortgagor can maintain a fiduciary duty claim against a substitute trustee like White when the trustee proceeds with a foreclosure sale even though the mortgagee has not complied with the face-to-face meeting requirement. (Pl. MTR Mem. at 5.) The Court agrees with Plaintiff.

---

[2] The Court's own review of the record confirms that White and A2ZProperty are citizens of Virginia. (*See* NOR ¶ 28 (alleging that White is incorporated under the laws of Virginia and maintains its principal place of business in Virginia); Fin. Interest Disclosure Statement of A2ZProperty, LLC (ECF No. 4) (representing that A2ZProperty is a limited liability company organized under the laws of Virginia whose sole member resides in Alexandria, Virginia).)

Indeed, in *Squire*, the Virginia Supreme Court considered claims against a mortgagee and substitute trustee on a mortgage loan, in which the plaintiff sought rescission of the foreclosure sale and damages based, in part, on the mortgagee's failure to hold a face-to-face meeting with the plaintiff pursuant to § 203.604. 758 S.E.2d at 57-58. The trial court held that although the mortgagee's breach of the face-to-face meeting requirement provided grounds to enjoin the foreclosure sale, the plaintiff could not rescind the completed sale without alleging that she could have cured her default on the mortgage loan. *Id.* at 58. Accordingly, the trial court sustained the defendants' demurrers as to all counts, including the plaintiff's fiduciary duty claim against the substitute trustee. *Id.* at 58-59.

On appeal, the Virginia Supreme Court reversed the trial court's ruling as to the fiduciary duty claim. Although the Court found that the plaintiff failed to allege that she could have cured her default, the Court held that the face-to-face meeting requirement constituted a condition precedent to the foreclosure sale that the substitute trustee could not avoid. *Id.* at 59-60. Because the plaintiff sufficiently alleged that the mortgagee failed to comply with the face-to-face meeting requirement, the Virginia Supreme Court held that the plaintiff had stated a claim for breach of fiduciary duty against the substitute trustee. *Id.* at 61.

The allegations that the Virginia Supreme Court upheld in *Squire* mirror the allegations raised by Plaintiff here. Indeed, as in *Squire*, although Plaintiff fails to allege an ability to cure the default on his mortgage loan, he has sufficiently alleged that PNC Bank failed to comply with the face-to-face meeting requirement and that White proceeded with the foreclosure sale despite receiving notice of PNC Bank's noncompliance. And although PNC Bank cites to the Virginia Supreme Court's recent decision in *Young-Allen* to argue that Plaintiff cannot sustain a claim against White without alleging an ability to cure his default, (PNC MTR Resp. at 12 (citing

17

839 S.E.2d at 902)), because the "no possibility" standard under the fraudulent joinder doctrine requires the Court to resolve all inferences of law in Plaintiff's favor, the Court declines to find that *Young-Allen* overturned *Squire* without an explicit ruling to that effect, leaving Plaintiff with a possible claim against White.[3]

Because Plaintiff has stated a possible claim against White and both White and Plaintiff are citizens of Virginia, complete diversity among the parties does not exist and the Court cannot exercise diversity jurisdiction over Plaintiff's claims. With neither federal question nor diversity jurisdiction over Plaintiff's claims, the Court must remand.

### IV.    CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiff's Motion to Remand (ECF No. 7), REMANDS this case to the Circuit Court for the County of Chesterfield and DENIES WITHOUT PREJUDICE Defendants' Motions to Dismiss (ECF Nos. 5, 13, 18). An appropriate order will issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

_____/s/_____
David J. Novak
United States District Judge

Richmond, Virginia
Date: July 9, 2020

---

[3]    The same reasoning applies to PNC Bank's reliance on this Court's decision in *Moore v. Law Offices of Shapiro, Brown & Alt, LLP*, in which the Court ruled that the plaintiff there could not sustain a fiduciary duty claim against the substitute trustee based on the mortgagee's failure to comply with the face-to-face meeting requirement. 2015 WL 4877845, at *10 (E.D. Va. Aug. 13, 2015). That this Court might disagree that Plaintiff has stated a fiduciary duty claim against White improperly frames the question before the Court, for the "no possibility" standard requires the Court to ask only whether no possibility of a claim exists "in state court." Clearly, *Squire* provides that possibility here.